UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
JASON T. PILES,                                           :        ____Civ. ____
                                                          :
                Plaintiff,                              :        **COMPLAINT**
                                                          :        **WITH JURY DEMAND**
        -against-                                      :
                                                          :
ANTHROPOLOGIE, INC.,                                      :
                                                          :
                Defendant.                             :
------------------------------------------------------------------ X

        Plaintiff, Jason T. Piles ("Piles" or "Plaintiff"), by his attorneys, Liddle & Robinson, L.L.P., for his Complaint against Anthropologie, Inc. (referred to as "Anthropologie" or "Defendant") alleges as follows:

## THE NATURE OF THE ACTION

    1.    This is a civil action for damages and remedies for the violation of (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); (b) 42 U.S.C. § 1981 ("Section 1981"); (c) the New York State Executive Law § 296 et seq. ("New York State Human Rights Law"); and (d) the Administrative Code of the City of New York § 8-101 et seq. ("New York City Human Rights Law").

    2.    Plaintiff alleges (1) race discrimination, harassment, and retaliation in violation of Title VII; (2) race discrimination, harassment, and retaliation in violation of Section 1981; (3) race discrimination, harassment, and retaliation in violation of the New York State Human Rights Law; (4) race discrimination, harassment, and retaliation in violation of the New York City Human Rights Law.

## THE PARTIES

3. Plaintiff, Jason T. Piles, is an individual that resides in Hackensack, New Jersey.

4. Defendant Anthropologie Inc. is an international company with its principal office located at 5000 S Broad Street, Philadelphia, Pennsylvania 19112-1495 and with the relevant retail store located at 85 Fifth Avenue, New York, New York 10003.

## JURISDICTION

5. This Court has subject matter jurisdiction over this action under 28 U.S.C §§ 1331 and 1367.

6. Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission, and is filing this Complaint within ninety days of receiving the Notice of Right to Sue.

## VENUE

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Mr. Piles' claims occurred within the Southern District of New York.

## SUMMARY

8. Jason Piles is African American.

9. Mr. Piles was racially harassed and discriminated against by Anthropologie. Mr. Piles discovered highly offensive racial slurs written on the walls of the employee restroom and complained to his manager. He was terminated on that same day in retaliation for his complaint of racial discrimination and harassment.

10. Because of the way he was treated by Anthropologie, Mr. Piles lost his job and suffered emotional distress.

11. As detailed below, Anthropologie discriminated against Mr. Piles on the basis of

his race, created a racially hostile work environment, and retaliated against him for complaining of discrimination.

## FACTS

12. Mr. Piles was employed by Anthropologie as a loss prevention agent (more familiarly known as a security guard) in various stores, beginning on August 12, 2012 until it terminated his employment on September 7, 2014 for discriminatory and retaliatory reasons.

13. At the time of the termination of his employment, Mr. Piles was employed at Anthropologie's store at 85 Fifth Avenue, New York, New York 10003.

14. One Sunday, September 7, 2014, Mr. Piles arrived at work at approximately 11:00 a.m. and clocked in for his 11:00 a.m. shift.

15. Shortly thereafter, Mr. Piles went to the employee restroom. Upon entering the restroom, Mr. Piles discovered racial epithets scrawled on the walls. The epithets included the following: "Tourde Black Nigger"; "Jason – Nigger"; "Alison –>Nigger"; "Can't stand Niggers."; "Hate Nigger Customers"; "KKK White Power"; and "Niggers go home".

16. Mr. Piles was shocked, angry, and hurt. All these emotions were hitting him.

17. His first instincts told him to take pictures of these disgusting writings. He proceeded to retrieve his phone from his locker and took photographs of the restroom walls and then notified his manager on duty at the time – Mi Ri Han (who was also frequently referred to as "Mary"). (See the photographs, which have been digitally enhanced, attached as Exhibit A.)

18. When Ms. Han entered the restroom with Mr. Piles and witnessed the racial slurs on the wall, she said nothing. Mr. Piles looked at her and asked her, "Mary, what is going on? Is this the kind of people we have working here?" Ms. Han advised Mr. Piles to go upstairs (to the store floor where he had been posted as the loss prevention agent). Mr. Piles responded to Ms.

Han, "Go upstairs? At this point I don't want to be here today." Ms. Han then suggested that Mr. Piles go to the Manager's Office.

19. Once inside the Manager's office, Mr. Piles began to tell Ms. Han how offended he was about the racial scrawlings on the wall. He asked her "What are you going to do about it?"

20. Ms. Han remained quiet for a moment and appeared uncertain about what to do.

21. Mr. Piles began questioning Ms. Han about the company policy concerning race and discrimination. He asked her for the Employee Handbook and she said we are out of them right now. Mr. Piles then said, "But shouldn't you know the policy about racial discrimination? Is there such a policy?" Ms. Han responded "Yes."

22. Mr. Piles replied by saying "If I'm correct it states that there is zero tolerance concerning such a matter." With that being said Mr. Piles asked her "What are you going to do?" He even suggested Ms. Han call a meeting or to call Jeff Teeter, the district manager. Ms. Han said nothing in response.

23. Ms. Han then stood up and said, "I'm terminating you."

24. Mr. Piles asked "For what?" Ms. Han replied: "For using language that is inappropriate towards a manager." Mr. Piles asked "What language am I using that is inappropriate? I'm upset, yes." Mr. Piles did not once say to Ms. Han anything that was inappropriate. Mr. Piles said to Ms. Han "My anger is not directed towards you. I'm upset at what was written on the wall."

25. Ms. Han stated, "I'm sorry Jason. Get your things out of your locker and leave."

26. Ms. Han barely provided Mr. Piles with a reason for his termination and the reason she did provide him with was pretextual. Not only was no investigation made into the highly offensive racial slurs that Mr. Piles found in the employee restroom before his employment was

4

terminated, but his employment was terminated because of his complaints about the racially discriminatory markings on the restroom wall and his questioning his manager about what would be done to address the situation.

27. Mr. Piles was in disbelief and stared at Ms. Han for a few seconds after he was told to get his belongings and said "Fine." He could not imagine working there for another second anyway.

28. Ms. Han then advised Mr. Piles that he could call "Liz" Schneider, the store manager, the next day if he wished. Mr. Piles said to Ms. Han, "Call Liz? For what? I'm sure you will call her before I do."

29. Mr. Piles then left the office, retrieved his belongings from his locker, and left the store.

30. Ms. Han was wrong in her decision to terminate Mr. Piles' employment. Ms. Han showed no sympathy or remorse, whatsoever. Mr. Piles felt that, as a manager, she should have dealt with the situation differently. He believes that racism is a very sensitive and emotional issue and there should be no room for it in a working environment.

31. Following his termination, Mr. Piles subsequently learned from another employee, Myesha Gardner, that the employee restroom was blocked off for most of the same day following Mr. Piles' termination on September 7, 2014, and that when the restroom was finally re-opened a few hours later, it smelled like fresh paint and it was visible that certain areas of the wall had been freshly painted.

32. Mr. Piles was also informed by Ms. Myesha Gardner that Ms. Schneider called her to arrange for them to meet at a bakery (Crumbs) to discuss what happened within a day or two of the termination of Mr. Piles' employment.

33. Ms. Gardner informed Mr. Piles that Ms. Schneider told her that Mr. Piles was terminated for something else, but did not tell her about the writing on the wall when Ms. Gardner asked her what happened.

34. Upon information and belief, Ms. Schneider questioned several other African-American employees to see if or what they knew regarding the incident. It was a clear violation of company policy on Ms. Schneider's part to discuss with an employee why anyone was terminated.

35. Upon information and belief, another African American employee, Drucilla Lennard, was retaliated against for reporting to Ms. Schneider that she had been harassed. Ms. Lennard informed Mr. Piles that Ms. Schneider had made her cry when she reported being harassed by another employee and Ms. Schneider blamed Ms. Lennard for the harassment she was experiencing. After reporting the harassment, Ms. Lennard noticed that the hours she was assigned to work began to decrease and Ms. Schneider made comments about how it did not seem that Ms. Lennard wanted to be at work. Ms. Lennard asked other managers how they felt she was performing and more than one told her she was an excellent worker. Eventually, Ms. Lennard quit because her hours had been decreased so drastically.

36. Upon information and belief, another former African American loss prevention agent, Sherwin Pollard, was terminated because of trumped up false accusations against him (regarding the failure to fill out a theft report to the satisfaction of a superior). Upon information and belief, the termination of Mr. Pollard's employment was also discriminatory based on his race.

37. Anthropologie has a pattern and practice of discriminating against African American customers by profiling them as probable thieves and having sales associates follow them closely around the store while they are shopping. For example, Mr. Piles witnessed one

embarrassing incident where a manager had to notify a sales associate to stop following an African American woman around the store since she was an ABC news anchor and would be unlikely to steal anything.

38. The termination of Mr. Piles' employment was retaliatory, as he was terminated because of his complaints about the racially discriminatory markings on the restroom wall and his questioning his manager about what would be done to address the situation.

39. As a result of Anthropologie's actions, Mr. Piles lost his employment, his compensation, and suffered stress, anguish, humiliation, and financial hardship.

40. At the time of Mr. Piles' termination, Anthropologie provided nothing more than a pretextual reason for his termination, stating that he was being terminated for using "language that was inappropriate toward a manager."

41. After Mr. Piles' termination, Anthropologie's stated reason to the EEOC for his termination was that Mr. Piles was nine minutes late on the day in question.

42. Anthropologie offered this after-the-fact justification for Mr. Piles' termination despite the fact that Anthropologie has an informal policy that provides for a ten-minute grace period for employees before they are considered "late" for their shift.

43. The reasons that Anthropologie has provided for Mr. Piles' termination are clearly pretextual, and the real reason Mr. Piles was terminated was because he is African American and in retaliation for his complaints about race discrimination at Anthropologie.

**FIRST CLAIM**
**(Race Discrimination / Racially Hostile Work Environment In Violation Of Title VII Of The Civil Rights Act Of 1964)**

44. Mr. Piles repeats and realleges the allegations contained above as if separately set forth herein.

45. At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. § 2000e(f).

46. Defendant is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

47. Defendant's actions constitute unlawful discrimination against Plaintiff on the basis of his race in violation of Title VII.

48. The race discrimination was so offensive, severe, and/or pervasive that it altered the terms and conditions of Plaintiff's employment.

49. Defendant's discriminatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights, entitling him to punitive damages under Title VII.

50. As a result of Defendant's discriminatory conduct, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, emotional pain, and mental anguish, in an amount to be determined at trial.

## SECOND CLAIM
### (Retaliation In Violation Of Title VII Of The Civil Rights Act Of 1964)

51. Mr. Piles repeats and realleges the allegations contained above as if separately set forth herein.

52. At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. § 2000e(f).

53. Defendant is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

54. As set forth above, Plaintiff opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under Title VII by complaining that the racial slurs written on the employee restroom wall were discriminatory and questioning his manager about what would be done to address the situation.

55. Defendant retaliated against Plaintiff for having engaged in the protected activity described in the preceding paragraph by terminating his employment on September 7, 2014.

56. Defendant's stated reason for Plaintiff's termination, that he was nine minutes late on September 7, 2014, is clearly pretextual for the discriminatory reasons behind in his termination.

57. Defendant's retaliatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights, entitling him to punitive damages under Title VII.

58. As a result of Defendant's retaliatory conduct, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, emotional pain, and mental anguish, in an amount to be determined at trial.

## THIRD CLAIM
### (Race Discrimination / Racially Hostile Work Environment In Violation of Section § 1981)

59. Mr. Piles repeats and realleges the allegations contained above as if separately set forth herein.

60. Defendant's conduct toward Plaintiff constitutes an infringement of his right to make and enforce contracts in violation of Section 1981 and was done because Plaintiff is African American.

61. The race discrimination was so offensive, severe, and/or pervasive that it altered the terms and conditions of Plaintiff's employment.

62. Defendant's discriminatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights, entitling Plaintiff to punitive damages.

63. As a result of Defendant's discriminatory conduct, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, emotional pain, and mental anguish, in an amount to be determined at trial.

## **FOURTH CLAIM**
**(Retaliation In Violation Of Section § 1981)**

64. Mr. Piles repeats and realleges the allegations contained above as if separately set forth herein.

65. Defendant's conduct toward Plaintiff constitutes an infringement of his right to make and enforce contracts in violation of Section 1981.

66. As set forth above, Plaintiff opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under Section 1981 by complaining that the racial slurs in the employee restroom were discriminatory and questioning his manager about what would be done to address the situation.

67. Defendant retaliated against Plaintiff for having engaged in the protected activity described in the preceding paragraph by terminating his employment on September 7, 2014.

68. Defendant's stated reason for Plaintiff's termination, that he was nine minutes late on September 7, 2014, is clearly pretextual for the retaliatory reasons behind in his termination.

69. Defendant's retaliatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights, entitling Plaintiff to punitive damages.

70. As a result of Defendant's retaliatory conduct, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, emotional pain, and mental anguish, in an amount to be determined at trial.

## FIFTH CLAIM
### (Race Discrimination / Racially Hostile Work Environment In Violation Of the New York City Human Rights Law)

71. Mr. Piles repeats and realleges the allegations contained above as if separately set forth herein.

72. Plaintiff is a "person" under § 8-102(1) of the New York City Human Rights Law.

73. Defendant is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

74. Defendant's actions constitute unlawful discrimination against Plaintiff on the basis of his race in violation of the New York City Human Rights Law, § 8-107(1)(a).

75. The race discrimination described above resulted in Plaintiff being treated less well than other employees because he was African American.

76. Defendant's discriminatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights, entitling him to punitive damages.

77. As a result of Defendant's discrimination, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, emotional pain, and mental anguish, in an amount to be determined at trial.

## SIXTH CLAIM
### (Retaliation In Violation Of The New York City Human Rights Law)

78. Mr. Piles repeats and realleges the allegations contained above as if separately set forth herein.

79. As set forth above, Plaintiff opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under the New York City Human Rights Law

11

by complaining that the racial slurs in the employee restroom were discriminatory and questioning his manager about what would be done to address the situation.

80. Defendant retaliated against Plaintiff for having engaged in the protected activity described in the preceding paragraph by terminating his employment on September 7, 2014.

81. Defendant's stated reason for Plaintiff's termination, that he was nine minutes late on September 7, 2014, is clearly pretextual for the retaliatory reasons behind in his termination.

82. Defendant's actions constitute retaliation against Plaintiff in violation of the New York City Human Rights Law, § 8-107(7).

83. Defendant's retaliatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights, entitling him to punitive damages.

84. As a result of Defendant's retaliation, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, emotional pain, and mental anguish, in an amount to be determined at trial.

### SEVENTH CLAIM
### (Race Discrimination / Racially Hostile Work Environment In Violation Of the New York State Human Rights Law)

85. Mr. Piles repeats and realleges the allegations contained above as if separately set forth herein.

86. At all relevant times, Plaintiff was an "employee" for purposes for § 292 of the New York State Human Rights Law.

87. Defendant is an "employer" for purposes of § 296 of the New York State Human Rights Law.

88. By its actions detailed above, Defendant's actions constitute unlawful discrimination against Plaintiff on the basis of his race in violation of New York State Human Rights Law.

89. The race discrimination was so offensive, severe, and/or pervasive that it altered the terms and conditions of Plaintiff's employment.

90. As a result of Defendant's discrimination, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, emotional pain, and mental anguish, in an amount to be determined at trial.

## EIGHTH CLAIM
**(Retaliation In Violation Of The New York State Human Rights Law)**

91. Mr. Piles repeats and realleges the allegations contained above as if separately set forth herein.

92. As set forth above, Plaintiff opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under the New York State Human Rights Law by complaining that the racial slurs in the employee restroom were discriminatory and questioning his manager about what would be done to address the situation.

93. Defendant retaliated against Plaintiff for having engaged in the protected activity described in the preceding paragraph by terminating his employment on September 7, 2014.

94. Defendant's stated reason for Plaintiff's termination, that he was nine minutes late on September 7, 2014, is clearly pretextual for the retaliatory reasons behind in his termination.

95. Defendant's actions constitute retaliation against Plaintiff in violation of the New York Human Rights Law, § 296.

96. As a result of Defendant's retaliation, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, emotional pain, and mental anguish, in an amount to be determined at trial.

WHEREFORE, Plaintiff prays that this Court grant judgment to him containing the following relief:

1. An award of Plaintiff's actual damages in an amount to be determined at trial for loss of compensation and professional opportunities, including an award of back pay and an award of reinstatement or front pay;

2. An award of pre-judgment interest;

3. An award of damages in an amount to be determined at trial to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

4. An award of punitive damages;

5. An award of reasonable attorneys' fees and the costs of this action;

6. An order enjoining Defendant from engaging in the wrongful practices alleged herein; and

7. Such other and further relief as this Court may deem just and proper.


Dated: New York, New York
       August 14, 2015

                                        LIDDLE & ROBINSON, L.L.P.


                                        By: _s/_____
                                            Michael E. Grenert
                                            Atoosa Esmaili
                                        800 Third Avenue
                                        New York, New York 10022
                                        Phone: (212) 687-8500
                                        Facsimile: (212) 687-1505
                                        Email: mgrenert@liddlerobinson.com